**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRACE WONG, | Civil Action No.: 14-cv-379 (CCC) |
| Appellant, | |
| v. | |
| DONALD V. BIASE, Chapter 7 Trustee, | |
| Appellee. | |
| | |
| GRACE WONG, | Civil Action No.: 14-cv-761 (CCC) |
| Appellant, | |
| v. | **OPINION** |
| DONALD V. BIASE, Chapter 7 Trustee, | |
| Appellee. | |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

These matters come before the Court upon the two separate appeals of Grace S. Wong ("Appellant") arising from the same bankruptcy proceeding, see Bankr. D.N.J. Docket No. 13-16624, and upon the two separate motions of Appellee Donald V. Biase, Chapter 7 Trustee ("Trustee" or "Appellee") for Robert G. Shroeder ("Shroeder") and 583 Broadway, LLC, 74 Prospect Place, LLC, 539 Piermont LLC, 459 Broadway, LLC, 89 Broadway Park Ridge, LLC and 99 Roland Street Park Ridge, LLC (collectively, the "Related Debtors") to dismiss those appeals. Because the two appeals raise substantially the same issues of law and fact, the Court will consider the motions to dismiss together.

The Court has carefully considered the submissions made in support of and in opposition to the instant motions. The Court did not hear oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Appellee's motions to dismiss both appeals are granted.

## II. BACKGROUND

Appellant appealed two related orders arising from the same bankruptcy proceeding. The appeal at issue in Civil Action No. 14-cv-379 is from an Order (A) Approving Bidding Procedures in Connection with the Trustee's Sale of Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances; (B) Approving the Form and Manner of Notice of Such Sale; (C) Setting the Sale Hearing Date; and (D) Granting Further and Related Relief, entered October 30, 2013 (the "Bidding Procedures Order"). The appeal at issue in Civil Action No. 14-cv-761 is from an Order Authorizing and Approving (A) Sale of Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§105(a) and 363(b), (f) and (m); and (B) Granting Further and Related Relief, entered December 18, 2013 (the "Sale Order").

On April 23, 2013, the Honorable Novalyn L. Winfield of the United States Bankruptcy Court for the District of New Jersey entered an Order for Relief under Chapter 7 of the Bankruptcy Code against Shroeder. Schroeder was indicted in December 2012 based on allegations that he issued bad checks and stole funds from individuals he persuaded to lend him money. Sale Motion (hereinafter defined) ¶¶ 5-6. Appellant is one of Shroeder's creditors.[1] On April 30, 2013, Biase was appointed as the Chapter 7 Trustee for Schroeder's case. Appellant thereafter commenced six Chapter 7 involuntary bankruptcy proceedings against the Related Debtors, entities wholly-owned

---

[1] Appellant asserts that she is a secured creditor, allegedly holding liens on the properties at 583 Broadway, 74 Prospect Place, 539 Piermont, 459 Broadway, 89 Broadway and 99 Roland Street (collectively, the "Related Debtors' Properties"). As of the date of the Sale Hearing (hereinafter defined), Trustee was still investigating the validity of Appellant's liens. See Sale Motion ¶¶ 13-41; Sale Hearing Tr. 49:23-50:4.

by Shroeder, and the Trustee was appointed as Chapter 7 Trustee for the Related Debtors' cases as well. On November 12, 2013, the Bankruptcy Court consolidated the Shroeder and Related Debtors cases.

The Trustee filed a motion on October 22, 2013 for the entry of Orders (A) Authorizing the Sale of the Related Debtors' Real Property Free and Clear of All Liens, Claims, Interests and Encumbrances; (B) Approving Bidding Procedures and Form, Manner and Sufficiency of Notice of the Sale; (C) Scheduling an Auction Sale and Hearing to Approve the Highest and Best Offers; and (D) Granting Further and Related Relief (the "Sale Motion"). On October 30, 2013, Judge Winfield conducted a hearing on parts (B) and (C) of the Sale Motion, during which Appellant was present. Appellant objected to the Sale Motion on the record. Following the hearing and over Appellant's objection, Judge Winfield granted parts (B) and (C) of the Sale Motion on the record and entered the Bidding Procedures Order. The Bidding Procedures Order provided that the Trustee would offer the Related Debtors' Properties for sale in Bankruptcy Court at the Auction and Sale Hearing on December 4, 2013. At the Auction and Sale Hearing, 100 Mile Fund, which had acquired first or second mortgages on all of the Related Debtors' Properties from Oritani Bank, was permitted to credit bid the full value of its secured claim on each of the Related Debtors' Properties pursuant to 11 U.S.C. § 363(k). Sale Order ¶ D. The Bidding Procedures Order was served on all interested parties, including Appellant, immediately upon entry of the Order.

Appellant filed a Notice of Appeal from the Bidding Procedures Order on November 27, 2013 [14-cv-379, ECF No. 1], twenty-eight days after the entry of the Bidding Procedures Order. Appellant did not file a request to extend the time for filing a notice of appeal or a motion for leave to file an interlocutory appeal. On December 4, 2013, the date of the Sale Hearing, Appellant filed a motion to stay the Sale Hearing pending her appeal of the Bidding Procedures Order.

Appellant was present at the Sale Hearing, during which Judge Winfield heard from Appellant regarding (1) her motion to stay the Sale Hearing pending her appeal of the Bidding Procedures Order and (2) her applications made on the record to dismiss the bankruptcy proceedings. In support of both her motion to stay the Sale Hearing and her request to dismiss the bankruptcy proceedings, Appellant argued first that the Bankruptcy Court lacked jurisdiction. In support of this contention, Appellant argued that the initial involuntary petition against Shroeder, was invalid because it was not brought by three or more creditors as required under 11 U.S.C. § 303(b). Sale Hearing Tr. 7:23-10:14. Appellant alleged that Quincy Wong, one of the three creditors who brought the initial petition against Shroeder, was not a secured creditor as required by statute, but rather gave Appellant money to loan to Shroeder. Id.

Second, Appellant argued that certain "procedural defects" and "fraud" pervaded the bankruptcy proceedings. Specifically, Appellant alleged that 100 Mile Fund's acquisition of first and second mortgages on the Related Debtors' Properties from Oritani Bank was improper because a representative of 100 Mile Fund initially told Shroeder's creditors that he would help them and subsequently purchased first and second liens on the Related Debtors' Properties, effectively "stab[ing Appellant and other creditors] in the back." Id. at 14:14-24. She also alleged that her status as an unsecured creditor was incorrect. Finally, she argued that the Trustee and his counsel knew and hid the fact that the involuntary petitions were invalid, and that because counsel for the Trustee is married to a partner in the law firm that is counsel to 100 Mile Fund, this suggested impropriety. Id. at 13:14-15:3.

Judge Winfield denied Appellant's motion to stay the Sale Hearing, noting that Appellant's appeal from the Bidding Procedures Order was untimely, that Appellant had failed file a motion for leave to appeal the interlocutory Bidding Procedures Order, and that "staying the sale frankly

only hurts you and [other creditors]," as the potential for recovery in the alternative, a foreclosure sale, would be worse than in bankruptcy court. Sale Hearing Tr. 31:2-9. Judge Winfield also rejected Appellant's arguments about lack of jurisdiction and other allegations of fraud and impropriety, as they were "not supported by anything in the record other than allegations." Id. at 30:22-25. In addition to finding that there was no evidence of fraud in the record, Judge Winfield noted that the transfer of Oritani Bank's liens on the Related Debtors' Properties to 100 Mile Fund was outside the scope of her authority. Id. at 31:22-24. As to Appellant's suggestion that a conflict of interest existed by reason of the marriage between Trustee's counsel and a partner at the law firm for 100 Mile Fund, Judge Winfield reiterated her finding from the October 30, 2013 hearing that no conflict existed. Id. at 31:19-22. The Bankruptcy Court then allowed the Sale Hearing to proceed.

On December 18, 2013, the Bankruptcy Court entered the Sale Order, approving, inter alia, the sale of all six properties auctioned at the Sale Hearing to the High Bidders at the auction or their assignees or designees (the "Buyers"), "free and clear of all liens, claims, interests and encumbrances in accordance with, and to the extent permitted by, Bankruptcy Code section 363(f)." Sale Order ¶ F. 100 Mile Fund was the High Bidder for four of the Related Debtors' Properties, while other bidders, David O'Brien and William Doody, were High Bidders for the two remaining properties. Sale Order ¶ E. In the Sale Order, the Bankruptcy Court found that "[t]he purchase price to be paid by each of the Buyers is fair consideration and constitutes reasonably equivalent value for each of the Related Debtors' Properties," and "[e]ach of the Buyers is a purchaser in good faith, as that term is used in Bankruptcy Code section 363(m), with respect to the Sale." Sale Order ¶¶ I, J. Further to its finding of good faith, the Bankruptcy Court elaborated:

> The Sale was negotiated, proposed and entered into by the parties in good faith, from arms'-length bargaining positions and without collusion, and therefore, each one of the Buyers is entitled to the protections of Bankruptcy Code section 363(m) with respect to the Sale. Neither the Trustee nor any of the Buyers have engaged in any conduct that would cause or permit the Sale to be voided, nor that would justify the imposition of costs or damages, under Bankruptcy Code section 363(n).

Id. In addition, the Sale Order authorized payment of two carve-outs pursuant to 11 U.S.C. § 506(c) to the Trustee from 100 Mile Fund from the proceeds of certain sales. Sale Order ¶ 13. The Sale Order further denied Appellant's motion to stay the Sale Hearing pending her appeal of the Bidding Procedures Order and Appellant's oral request to dismiss the bankruptcy case. Sale Order ¶ 3. Appellee represents that following the entry of the Sale Order, the Appellee closed on the sale of the six properties, and all titles have been conveyed to the respective buyers of the properties. Schiff Cert. ¶¶ 9-12.

Appellant filed an appeal of the Sale Order on December 30, 2013 [14-cv-761, ECF No. 1]. Appellant did not file a motion to stay the effect or entry of the Sale Order. See Bankr. D.N.J. Docket No. 13-16624. Appellant's November 27, 2013 appeal of the Bidding Procedures Order is pending before this Court as well. Appellant filed a single statement of issues to be presented on appeal pursuant to Federal Rule of Bankruptcy Procedure 8006 for both appeals. See Appellant's Designation of Record on Appeal of Orders Dated 30-Oct-2013 and 4-Dec-2013 by Bankruptcy Court [14-cv-379, ECF No. 2].[2]

Appellant alleges on appeal substantially the same arguments that she made on the record at the Sale Hearing, namely: (a) that the Bankruptcy Court lacked jurisdiction over the bankruptcy proceedings; (b) that the Bankruptcy Court conducted itself improperly "through the actions it allowed and orders it had issued . . . because of the fraud committed upon the Court by the Trustee,

---

[2] Appellant incorrectly refers to the December 18, 2013 Sale Order as the December 4, 2013 Order.

6

his counsel and the subject Bank lien holder"; (c) that the Bankruptcy Court abused its discretion; and (d) that the Bankruptcy Court "allowed the conduct of procedural infirmities which had violated the Due Process rights of [Appellant] and other creditors." Id. at 1-2. Appellant asks this Court "[t]o declare the proceedings in the Bankruptcy Court as null and void for lack of jurisdiction," to void the Bidding Procedures Order and the Sale Order, to cancel the transfer of ownership "done through said auction proceedings" and, to the extent possible, to "return the properties to its [sic] original state prior to the assignment of rights done by Oritani Bank in favor of 100 Mile Fund," and to order the Bankruptcy Court to conduct "evidentiary and adversary proceedings" related to the fraud alleged by Appellant and her rights as a creditor. Id. at 10-11.

Appellee filed a Motion for Entry of Order Dismissing Appeal as to the Bidding Procedures Order appeal, arguing (1) that the appeal was untimely and (2) that the Bidding Procedures Order was interlocutory and Appellant failed to file a motion for leave to appeal as required. Appellee also filed a Motion for Entry of Order Dismissing Appeal as Moot as to the Sale Order, arguing that the appeal of the Sale Order is moot under 11 U.S.C. § 363(m).

### III. LEGAL STANDARD

United States district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" or "with leave of court, from other interlocutory orders and decrees" of bankruptcy courts. 28 U.S.C. § 158(a). A district court conducts a plenary review of the bankruptcy court's conclusions of law and may only set aside the bankruptcy court's findings of fact if they are clearly erroneous. Fed. R. Bankr. P. 8013; In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). Review of facts under the "clearly erroneous" standard is "significantly deferential and requires a 'definite and firm conviction that a mistake has been committed.'" Sheehan v. Dobin, 2011 WL 1627051, No. 10-5054, at *2 (D.N.J. Apr. 28, 2011) (quoting Concrete Pipe &

Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993)). "The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous." First Western SBLC, Inc. v. Mac-Tav, Inc., 231 B.R. 878, 881 (D.N.J. 1999) (citing Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)). Where there are mixed questions of law and fact, the Court must break them down and apply the appropriate standard to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992).

### IV.   DISCUSSION

#### A.   Motion to Dismiss the Bidding Procedures Order Appeal

This Court may hear appeals of final orders of the bankruptcy court, or appeals of interlocutory orders of the bankruptcy court if the appellant obtained leave to appeal. 28 U.S.C. § 158(a). To determine whether a bankruptcy court order is interlocutory, courts must weigh "the impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effects of [its] decision on the merits of further litigation and whether the interest of judicial economy would be furthered." In re Market Square Inn, Inc., 978 F.2d 116, 120 (3d Cir. 1992) (internal quotations omitted). Though the approach to finality in the bankruptcy context is flexible, "appellants cannot be permitted to appeal in a manner which results in numerous appeals of the same issue and specifically runs the risk of engendering inconsistent decisions in [appellate courts]." In re Truong, 513 F.3d 91, 94-95 (3d Cir. 2008). In In re Reliant Energy Channelview, LP, 397 B.R. 697, 699-700 (D. Del. 2008), the district court found that a Bidding Procedures Order was interlocutory because it did not have preclusive effect on further litigation until the sale became final through the Sale Order and because it was in the interests of judicial economy. The court determined that "it is best to wait and see how the sale proceeds before making any final determinations regarding . . . procedures used." Id. at 700.

...

Here, the facts support a finding that the Bidding Procedures Order was interlocutory. Appellant alleges the same claims of fraud and impropriety as to both the Sale Order and the Bidding Procedures Order and she seeks the same relief in both of her appeals—to overturn the sales. Thus, the Court lacks jurisdiction over the Bidding Procedures Order appeal because Appellant failed to obtain leave to file her interlocutory appeal. See 28 U.S.C. § 158(a).

Even if this Court were to find that the Bidding Procedures Order was a final, appealable order of the bankruptcy court, it would still lack jurisdiction. A notice of appeal from a final order of the bankruptcy court must be filed within fourteen days of the entry of the order appealed from. 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002. "[T]he prescribed timeline within which an appeal from a bankruptcy court must be filed is mandatory and jurisdictional." In re Caterbone, 640 F.3d 108, 110 (3d Cir. 2011). The bankruptcy court may extend the time to file a notice of appeal if a party requests such an extension by motion within the fourteen day period, or "within 21 days after that time, if the party shows excusable neglect." Fed. R. Bankr. P. 8002(d). Because Appellant's notice of appeal was untimely and no extension was requested or granted in this case, this Court would lack subject matter jurisdiction to hear the instant appeal even if it were to find that the Bidding Procedures Order was final.[3]

---

[3] Appellant's pro se status does not alter the jurisdictional requirement of Rule 8002. See In re Hussain, 532 F. App'x 196, 197 (3d Cir. 2013) (affirming district court's dismissal of pro se litigant's untimely appeal for lack of jurisdiction); In re Jacobwitz, 384 F. App'x 93, 94 (3d Cir. 2010) (same); In re Seagull, 155 F. App'x 80, 82 (3d Cir. 2005) (same). Appellant does not dispute that the Bidding Procedures Order was entered and served on Appellant at the October 30, 2013 hearing. Thus, Appellant had proper access to notice of the Bidding Procedures Order. In any event, "[l]ack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002." Fed. R. Bankr. P. 9022(a); In re Barbel, 212 F. App'x 87, 89 (3d Cir. 2006) ("Failure to receive notice is no defense. . . . It was [Appellant]'s responsibility to monitor the docket.").

Appellant's argument that the Court may consider her appeal under the "unique circumstances" doctrine is also inapposite. Under the "unique circumstances" doctrine, "an

9

Finally, for the reasons set forth below, because in her appeal of the Bidding Procedures Order Appellant asks this Court to overturn the sales of the Related Debtors' Properties, the application of Section 363(m) renders the appeal of the Bidding Procedures Order and the appeal of the Sale Order moot.

### B. Motion to Dismiss the Sale Order Appeal

Appellee presents this Court with the issue whether the appeal of the Sale Order should be dismissed as moot under Section 363(m) of the Bankruptcy Code, which provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

#### 1. Good Faith Purchaser Requirement

For Section 363(m) to apply, the Buyers must have purchased the Related Debtors' properties in good faith. A bankruptcy court must make a finding with respect to a purchaser's good faith when authorizing an asset sale under 11 U.S.C. § 363(b). In re Abbots Dairies of Pa., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986). As "good faith" is not defined in the Bankruptcy Code, "[c]ourts applying section 363(m) . . . have, therefore, turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for

---

appellate court may consider an appeal out of time where an appellant relies on a statement by the appropriate court that the notice of appeal will be timely." In re Richardson Indus. Contractors, Inc., 190 F. App'x 128, 130 (3d Cir. 2006). Here, Appellant does not allege that reliance upon judicial action caused her appeal to be untimely. Moreover, in Bowles v. Russell, 551 U.S. 205, 214 (2007), the Supreme Court held that the "unique circumstances" doctrine cannot apply "to create equitable exceptions to jurisdictional requirements," such as the timely filing of a notice of appeal in a civil case. Cumberland Mut. Fire Ins. Co. v. Express Prods., Inc., 529 F. App'x 245, 249 (3d Cir. 2013) (quoting Bowles, 551 U.S. at 214).

'value.'" <u>Id.</u> at 147 (internal citations omitted). The "good faith" requirement "speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings," and would be destroyed by misconduct that "involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." <u>Id.</u> The "for value" requirement is usually met "when the purchaser pays 75% of the appraised value of the assets," and an auction is generally sufficient to establish that one has paid "value" in a bankruptcy sale if the "good faith" requirement is met. <u>Id.</u> at 149.

Here, the Bankruptcy Court correctly used the above standard to evaluate the good faith status of the Buyers at the Sale Hearing. <u>See</u> Sale Order ¶¶ I, J. Appellant argues that fraud and collusion destroyed the Buyers' good faith status, first because 100 Mile Fund allegedly acquired its liens on the Related Debtors' Properties improperly, second because of the appearance of impropriety arising from the marriage of counsel for the Trustee to a partner at the law firm that is counsel for 100 Mile Fund, and third because of generalized allegations that the Trustee and 100 Mile Fund conspired to hide from the Bankruptcy Court a jurisdictional issue.

The Bankruptcy Court considered and rejected Appellant's allegations of fraud and misconduct, and nothing in the record indicates that the Bankruptcy Court's findings of fact as to the Buyers' good faith status were clearly erroneous. First, as 100 Mile Fund acquired the mortgages on Related Debtors' Properties well in advance of the sale proceedings, Appellant did not put the conduct of 100 Mile Fund in the course of the actual sale proceedings in question. <u>See</u> Appellant's Br. Opp. Mot. to Dismiss [14-cv-761, ECF No. 8] ¶ n ("In the case at bar, the incidents leading up to the judicial sale is what is tainted with fraud, and not the sale itself."). In any event, there is no evidence in the record, other than Appellant's allegations, that 100 Mile Fund acted improperly. In response to Appellant's concerns about 100 Mile Fund's acquisition

of the mortgages, Judge Winfield stated on the record at the Sale Hearing:

> [I]t does not impair the sale proceeding . . . [I]t is commonplace, as I'm sure you know that banks want to offload debt that's not productive income producing obligations. People like Mr. Procida, 100 Mile Fund and any other number of entities come in and buy that debt, generally always discounted as we know, and attempt to make a silk purse out of the sow's ear. . . . Mr. Shroeder appears to be the primary cause of the pain inflicted on [the creditors] and we can only hope that from these properties there will be a greater dollar value that will soften the blow to creditors.

Sale Hearing Tr. 31:22-32:15. Appellant also suggests in her papers opposing dismissal of this appeal that the carve-outs paid by 100 Mile Fund to the Trustee upon the closings of the sales of certain properties were suggestive of fraud or collusion. Though Appellant's objection to the carve-outs was not made on the record before Judge Winfield, there is nothing in the record suggesting the carve-outs were improper, as they were paid pursuant to 11 U.S.C. § 506(c), which permits the trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ."

Second, the Bankruptcy Court heard both counsel for the Trustee and Appellant on the record at the October 30, 2013 hearing regarding Appellant's allegations of impropriety based on counsel's marriage to a partner at the law firm representing 100 Mile Fund. Counsel for the Trustee explained that her husband was not involved in any way in the bankruptcy proceedings at issue, and noted that her participation in the matter violated no rule of professional conduct or otherwise. The Bankruptcy Court agreed and found no conflict of interest or impropriety. Sale Hearing Tr. 31:19-24. Nothing in the record suggests this was clearly erroneous.

Finally, at the Sale Hearing Judge Winfield addressed Appellant's claim that fraud had occurred by way of the Trustee's alleged effort to hide that one of the petitioning creditors in Shroeder's Chapter 7 case was not, in fact, a secured creditor. Judge Winfield found that

Appellant had put forth no evidence in support of this allegation, noting that the involuntary petition that was filed against Shroeder was facially sufficient and it was evident to the Bankruptcy Court that there were creditors. Id. at 28:3-30:25.

Nor does anything in the record suggest that the Bankruptcy Court's finding that the Buyers purchased the Related Debtors' Properties for "value" was clearly erroneous. As noted above, the "value" requirement is usually met where there is an auction and the Bankruptcy Court makes a finding of good faith. Abbots Dairies, 788 F.2d at 149. At the Sale Hearing in this case, there was an auction with active bidding on the Related Debtors' Properties. Judge Winfield noted that the sale was "conducted following noticing and active solicitation of bidding by the trustee and A.J. Willner," a firm providing auctioneer services for bankruptcy liquidations. Further, Judge Winfield found that the prices paid by the Buyers were fair consideration and were better than the alternative at a foreclosure sale, which had been contemplated for each of the Related Debtors' Properties prior to the bankruptcy proceedings. Sale Hearing Tr. 48:25-49:8. Finally, the prices paid by Buyers exceeded 75% of the appraised values (as represented in the Sale Motion), and in some cases exceeded the appraised values, for each property. See Sale Motion ¶¶ 13-41; Sale Order ¶ E.

In light of the foregoing, this Court finds no clear error in the determination of the Bankruptcy Court that the Buyers were good faith purchasers under Section 363.

### 2. Mootness Analysis in the Third Circuit

The Third Circuit has rejected a per se rule that would moot every appeal of a sale not accompanied by a stay under Section 363(m). Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 499 (3d Cir. 1998). Instead, there are two requirements that must be met in order for such an appeal to become moot: "(1) the underlying sale or lease must not have been

13

stayed pending appeal, and (2) reversing or modifying the authorization to sell would affect the validity of the sale or lease." Cinicola v. Scharffenberger, 248 F.3d 110, 122 (3d Cir. 2001). "In considering whether reversal or modification would affect the validity of a sale, courts must look to the remedies sought and assess whether these would impact the terms of the bargain struck by the buyer and seller." In re Alabama Aircraft Indus., Inc., 514 F. App'x 193, 195 (3d Cir. 2013) (citing Krebs, 141 F.3d at 499).

In this case, the sales of Related Debtors' Properties were not stayed pending appeal and the relief Appellant requests on both of her appeals would necessarily affect the validity of the sales, as Appellant seeks to reverse the sales in their entirety. Even if it were well supported, Appellant's argument that the Bankruptcy Court lacked jurisdiction over the bankruptcy proceedings does not alter the mootness analysis. The mootness analysis under Section 363(m) "does not distinguish between a challenge to an order approving a sale predicated on jurisdictional grounds and a challenge based on other grounds." Pittsburgh Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 651 (3d Cir. 1997) (affirming dismissal of appeal as moot under Section 363(m) despite appellant's argument that bankruptcy court lacked jurisdiction). Thus, the requirements for statutory mootness are met with respect to both of Appellant's appeals.

## V.     CONCLUSION

For the reasons above, the Court grants Appellee Donald V. Biase's Motion for Entry of Order Dismissing Appeal [14-cv-379, ECF No. 5] and Motion for Entry of Order Dismissing Appeal as Moot [14-cv-761, ECF No. 4]. An appropriate order accompanies this opinion.

DATED: September 29, 2014

**CLAIRE C. CECCHI, U.S.D.J.**